IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ARMENTA, | No. 2:23-CV-0651-TLN-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| R. ST. ANDRE, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss, ECF No. 21. Plaintiff has filed an opposition, ECF No. 22. Defendants have filed a reply, ECF No. 23.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See

Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at Corcoran State Prison. See ECF No. 19. Plaintiff was previously housed at High Desert State Prison (HDSP) in Susanville, California, where the alleged violations occurred. ECF No. 1, pg. 1. Plaintiff names the following as defendants: (1) R. St. Andre, prison warden; (2) Shalom Orenstein, a prison Rabbi; (3) Ms. Sphere, identified as "CRM;" (4) Brian Kiebler, prison warden; and (5) K. Allison, Director of the California Department of Corrections and Rehabilitation (CDCR). See id. Plaintiff alleges violations of the First Amendment, Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Plaintiff claims that, as required by his religion as a Messianic Jew, Plaintiff seeks to follow a kosher diet. See id. Plaintiff was approved for a kosher diet in 2018. See id. In 2020, Plaintiff requested to change his diet from kosher food. See id. When in 2022 Plaintiff applied to resume his kosher diet, his request was denied by Rabbi Orenstein, Ms. Sphere of the religious committee, and Warden Kiebler. See id. They justified the denial based on Plaintiff's previous non-kosher diet request and Plaintiff "not having a clear understanding of kosher to assimilate the full scope of its doctrine." Id. at 2-3. Plaintiff applied again in 2023 and was denied by Warden St. Andre. See id. at 8. Plaintiff also alleges Defendants denied him the opportunity to participate in the Passover in March 2023. See id. at 10. Plaintiff alleges Wardens St. Andre and Kiebler allowed unwritten rules to violate Plaintiff's rights. See id. at 7. He also alleges Defendant K. Allisson created an unconstitutional policy. See id. at 7-8.

## II. DISCUSSION

In their motion to dismiss, Defendants argue: (1) Plaintiff's claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment; (2) to the extent Plaintiff seeks injunctive relief under RLUIPA, his claim is moot because Plaintiff is no longer housed at HDSP and because Plaintiff does not identify whether such relief is sought against Defendants in their official capacities; (3) Plaintiff fails to allege facts sufficient to maintain an equal protection claim under the Fourteenth Amendment; (4) Plaintiff fails to

3

allege facts sufficient to maintain a claim based on denial of free exercise of religion; and (5) Plaintiff's claim against supervisory defendants – St. Andre, Keibler, and Allision – are insufficient. See ECF No. 21.

### A. Eleventh Amendment Immunity

The Eleventh Amendment bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities. See id. Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). The Eleventh Amendment also does not bar suits against cities and counties. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978).

Here, Defendants argue that Plaintiff cannot maintain a suit for damages against them in their official capacities. Because Plaintiff does not specify whether he is suing defendants in their official or personal capacities, the Court must determine the capacity in which the Defendants are sued. In doing so, the Court examines the nature of the proceedings to determine the capacity in which a defendant is sued. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996). Where the plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred. See Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016); Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999); Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284 (9th Cir. 1994); Cerrato v. S.F. Cmty. Coll. Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994). To the extent Plaintiff is seeking damages, given Plaintiff's pro se status the Court will presume that he is suing Defendants in their individual capacities.

///

///

B. **Injunctive Relief**

As discussed above, the Eleventh Amendment does not bar suits against state officials for prospective injunctive relief. Defendants argue that, even so, Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer housed at HDSP.

"Federal courts lack jurisdiction over claims that have been rendered moot because 'the issues presented are no longer live' or because the parties no longer possess 'a legally cognizable interest in the outcome.'" Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012)). Even if the harm does not continue throughout the case, there may still be standing where the challenged action is "one that is capable of repetition, yet evading review." Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975). Courts have generally held that inmate claims against prison officials become moot when they are released from custody, or are transferred to a different facility, because at that point "there is no indication that [the plaintiff] will again be subjected to the challenged prison policies." Alvarez, 667 F.3d at 1064. See, e.g., Jones, 791 F.3d at 1031, Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991), Sample v. Borg, 870 F.2d 563 (9th Cir. 1989), Incumaa v. Ozmint, 507 F.3d 281, 285 (4th Cir. 2007); Cf. Lindquist v. Idaho State Bd. of Corr, 776 F.2d 851, 854 (9th Cir. 1985) (holding that construction of a new prison law library rendered a claim for access to the courts partially moot because of physical changes to the prison facility).

The Court agrees with Defendants' argument that Plaintiff's claim for injunctive relief is moot because Plaintiff is no longer housed at HDSP, which is where the alleged denial of kosher meals occurred. Since filing his complaint, Plaintiff has been transferred to Corcoran State Prison where he currently resides. See ECF No. 19 (notice of change of address). Plaintiff's claim for prospective injunctive relief should be dismissed as moot. This action should proceed only on Plaintiff's damages claims against Defendants in their individual capacities.

///
///
///
///

C.     **Equal Protection**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Defendants argue Plaintiff's equal protection claim is deficient because he does not allege Defendants treated Plaintiff differently from similarly situated inmates on account of his membership in a protected class. ECF No. 21 at 8. The Court agrees. Plaintiff fails to allege facts showing that Defendants intentionally discriminated against Plaintiff because he is Jewish. Plaintiff alleges that Defendants "failed to abide by policy and instead have implemented a policy

6

action that denies [him] kosher diet." ECF No. 1 at 3. However, Plaintiff also alleges that kosher meals were denied because Plaintiff was inconsistent with prior diet requests and purchased non-kosher food, not because he is Jewish. There are no facts alleged to suggest that other Jewish inmates were also denied kosher diets. Plaintiff's equal protection claim should be dismissed with prejudice.

### D. Free Exercise of Religion

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

///

///

///

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see

Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four

9

factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Defendants primarily argue that Plaintiff has failed to state a free exercise claim – under either the First amendment or RLUIPA – because Defendants did not burden Plaintiff's sincerely held religious beliefs. ECF No. 21, pgs. 9-10. According to Defendants:

> In 2018, the Religious Review Committee approved Plaintiff's request for a kosher diet. (ECF No. 1, at p. 2.) However, in 2020, Plaintiff elected to stop eating kosher because "he was having trouble receiving his kosher diet." (ECF No. 1, at p. 2-3.) Further, Plaintiff also purchased non-kosher items from the canteen. (ECF No. 1, at p. 2, Exs. A-D.) Courts in similar cases have determined that a plaintiff's belief was not sincerely held when the plaintiff chose to eat non-kosher meals when he was provided with a kosher diet. *See Howard v. Foster*, 208 F. Supp. 3d 1152, 1160 (D. Nev. 2016) ("Whereas plaintiff voluntarily chose to eat non-kosher meals at a time when he was being provided with a kosher diet, this court cannot find that plaintiff's 'proffered belief [was] sincerely held.'")

ECF No. 21, pg. 9.

///

///

Defendants' reliance on Howard v. Foster is misplaced. In that case, the court concluded that the inmate's election to eat non-kosher meals when he was provided a kosher diet showed a lack of sincerity in the inmate's proffered religious belief. The current case is distinguishable in that, as Defendants note, Plaintiff elected to eat non-kosher meals during a time when Plaintiff's request for kosher meals had been denied. Construed in Plaintiff's favor, the facts alleged suggest that, because Plaintiff's request for kosher meals had been denied, he had no choice but to eat non-kosher meals.

More persuasive is Defendants' argument that Plaintiff's decision to purchase non-kosher food items from the canteen undermines the sincerity of his religious belief. According to the complaint, while Plaintiff elected to receive non-kosher meals during a time when his request for a kosher diet had been denied, he nonetheless elected to purchase additional food items from the canteen which were non-kosher. This fact, alleged by Plaintiff, undermines the sincerity of his religious belief. See Parkerson v. Young, 2022 WL 17820153, at *8 (D. Or. Dec. 20, 2022) ("[G]iven . . . P[laintiff]'s regular purchase of non[-]kosher items from the . . . canteen, the court finds that P[laintiff] has failed to show that the denial of his request for a "meat-inclusive kosher diet" substantially burdened his ability to freely exercise his religious belief."); Forter v. Young, 2020 WL 1917331, at *5 (D. Or. Apr. 20, 2020), aff'd, 2023 WL 4488866 (9th Cir. July 12, 2023) ("plaintiff regularly purchased non-kosher items from the canteen prior to and during this lawsuit. This shows that any onus he bears regarding his diet does not put substantial pressure on him to modify his behavior").

Plaintiff's purchase of non-kosher items from the canteen is, however, not dispositive of the claim at this stage of the proceedings. Specifically, unlike in Parkerson and Forter, where the inmate regularly purchased non-kosher items from the prison canteen, in this case it is not clear whether Plaintiff purchased non-kosher items on a regular basis. It may be that he did so only sporadically during times when his request for a kosher diet provided by the prison was denied. The disputed factual question, which the Court cannot resolve at the pleading stage, is whether Plaintiff was forced to turn to non-kosher food items during a time when his request for a kosher diet had been denied, or whether Plaintiff regularly elected to eat non-kosher food

11

items even during times when he was allowed a prison-supplied kosher meal plan.

### E. **Supervisory Liability**

Plaintiff has sued two prison wardens – Keibler and St. Andre – as well as the Director of the CDCR – Allison. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

The Court does not agree that Plaintiff's allegations are insufficient as to Defendants Keibler and St. Andre. Plaintiff specifically alleges that, when they were asked to provide kosher meals, both denied the requests. Thus, Plaintiff's allegations against Keibler and St. Andre stem from their own personal conduct and not the conduct of subordinates.

/ / /

/ / /

The Court, however, agrees that Plaintiff's allegation against Defendant Allision, the Director of the CDCR, is insufficient. Plaintiff alleges in a conclusory manner that Defendant Allison implemented an unconstitutional policy, but Plaintiff does not say what that policy was or how it caused the deprivation of his free exercise rights. Plaintiff should be provided an opportunity to amend as to his allegations against Defendant Allison or stand on the original complaint as to his damages claims against the remaining defendants.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendants' motion to dismiss, ECF No. 21, be granted in part and denied in part as explained above.

2. Plaintiff's claim for injunctive relief be dismissed with prejudice as moot.

3. Plaintiff's equal protection claim be dismissed with prejudice for failure to state a claim.

4. Defendants' motion be denied as to Plaintiff's free exercise claim.

5. Plaintiff be provided an opportunity to proceed on the original complaint as to his free exercise claims for damages against Defendants St. Andre, Keibler, Orenstein, and Sphere, in their individual capacities or file a first amended complaint to assert additional facts as to Defendant Allison.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 15, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE